We'll hear argument first this morning in Case 16-369, County of Los Angeles v. Mendez. Mr. Rosenkranz. Rosenkranz. Thank you, Mr. Chief Justice, and may it please the Court. Your Honors, when a police officer reasonably thinks to himself, as Deputy Connolly did here, this is where I'm going to die, he has to be free to make the split-second decision to defend himself and those around him. Any legal rule that says that that is unreasonable is untenable. Sotomayor, you know, I have a – it is a very moving statement and one that I totally agree with. But we're not asking the police officers to make that choice. When they feel in danger, they're going to take the step that's important to them, and I think that's absolutely right. Sotomayor, the issue is who's going to suffer that loss, who's going to take the financial penalty of that loss, not the death of – the death of the officer. And so the question to me is not that one. The question is, when does the police officer pay the victim who is suffering for that loss if the victim had nothing to do with causing the loss? Understand. Sotomayor, or was justified in whatever he or she did to protect themselves. So let's take the situation, which I think you concede in your brief, that of the police officer who, in the dead of night, dressed in casual clothes, breaks a window in someone's home and walks into their home. And we've given them a Second Amendment right to victims, people who own homes, to possess firearms to protect themselves. And the victim sees a stranger breaking in who doesn't announce themself, doesn't have a uniform, and is standing there breaking in. The victim shoots that police officer or points a gun at that police officer. And the police officer takes a gun and shoots them and injures them or kills them. Now, who bears the financial loss in that situation? The homeowner who has a right to defend him or herself and say, it's my life or yours, or the police officer who has taken unreasonable action in breaking into a home in the homeowner's home or herself. That's the question for me. Rosenkranz. Understood, Your Honor. And the answer to that question is quite likely the officer, but not because of the provocation rule, but rather because the officer has committed a clearly unconstitutional act, which is not just entering, but also failing to knock and announce, clear violation of clearly established law, which then proximately causes what unfurls next. Well, let's break that down, because I see two scenarios in this for which a victim could recover. One is an unconstitutional violation that proximately causes an injury, okay? That's the theory you come to. And the second is if there was an unreasonable use of force by the police officer. You're taking out of the equation the second way of recovering? Yes, Your Honor. The use of force by the police officer at that moment was reasonable, but the police officer can be held liable for violating clearly established law, and in particular here, failing to inform the homeowner that this is an officer entering and what proximately flows from that. The problem with the latter theory, that is, the provocation theory as an excessive force matter, is there are multiple problems. The first is it imposes liability under plaintiff's approach for a new breed of constitutional tort, which is creating a dangerous situation without regard to whether it's a search or a seizure, or under your scenario, Justice Sotomayor, even the Ninth Circuit's test, there is something very incongruous about holding an officer liable for a use of force that is not excessive at the moment at which it is used, and therefore is reasonable, and therefore in compliance with the Fourth Amendment. And this goes to the point of the first theory, because you said if there was an unreasonable violation, excuse me, of the knock-and-announce rule, and a death or an injury proximately caused by that violation, then there could be recovery. Is that what you said? Rosenkranz, that is what I said. So let me just amend with one, I said one additional thing. Knock-and-announce violation, and that violation is a violation of clearly, a clearly established law. Kagan. Kagan. Kagan. So I guess the question is, why is this case any different? In other words, this case, you don't have the knock-and-announce violation. You have a different constitutional violation, which is an unauthorized entry. And why would it not be the case that the death or injury in such a case is also proximately caused by that violation? In other words, proximate cause says what kind of things are foreseeable, and it says an outer bound, and it says totally fluky random things we're not going to say are proximately caused. But it doesn't seem to me a fluky or random thing to say that when there's an unauthorized entry into somebody's home, violence may well result. And so the proximate cause analysis seems to flow in much the same way, maybe not to quite the same, like with quite the same obviousness, but in much the same way as in your knock-and-announce example. Your Honor, so just to be clear where we are, we're now talking about starting with the violation that is the knock-and-announce violation or the violation of searching without warrant. It's a simple question, Mr. Rosenkranz. Yes. You said something about knock-and-announce. I say why isn't the same theory applicable when the constitutional violation is unauthorized entry into somebody's home? For a very simple reason, Your Honor. We've got to start with a clearly established violation. Here, the only one in play is a failure to call a judge in advance and, for example, get a telephonic warrant. That is an unauthorized entry into somebody's home. Yes, it is. So that is the clearly established constitutional violation. Correct. Why isn't the proximate cause why isn't why wouldn't it be that a death or injury that results when somebody barges into, goes into somebody's home without legal authorization, that one of the things that foreseeably can result from that is a shooting? Well, Your Honor, the answer is that calling the judge in advance would not have made a bit of difference in this case. In the facts of this case, police arrest without a warrant a man who's having dinner with his family and friends, white-collar crime. They did not get a warrant. They did have probable cause. They could have gotten a warrant. And he sues, and later the charges are dismissed, it was a mistake, but there were still probable cause. And he sues for fright and humiliation. Under your theory, you'd say, well, even if he got a warrant, he'd have the same fright and humiliation, so there's no damage. That's correct, Your Honor, because the warrant requirement. Well, then we simply have no way to enforce the warrant requirement. So you stand by the proposition that if there is an unlawful entry, an unlawful arrest, because of a lack of a warrant, no damage because the arrest would have happened with the warrant anyway. Your Honor, I'm not saying you want us to write that in the law. I'm not saying no damage, but certainly not the physical injury that occurred here. But let me play out the reason for the answer, Your Honor. Let's stick with this hypothetical. Under your view, we're saying that you cannot sue for damages and humiliation if there's an entry without a warrant if there had been probable cause otherwise. That's the rule you want us to announce. If the search And if that's so, I'd like the citation for that case. Your Honor, if the search If the search would have happened no matter what, yes. Now, maybe humiliation, sure, because, I mean, if the warrant would have prevented that humiliation, then you could sue for it. But let's assume that it wouldn't. In fact, it would have been even worse because a judge would have ordered the arrest. Then there's definitely no damage. But let me just link your Can you tell me if Paula Jones, on your theory, Paula Hughes, Paula Hughes, the homeowner, who was there was no warrant and she was placed in a car and treated rather badly, would she have a 1983 claim? She may well have a 1983 claim, Your Honor, for the poor treatment when she was not actually a criminal. But I do need to – I do want to get to Justice Kennedy's question and link it to the to Justice Kagan. On the facts presented in this appeal, the judge would have granted the warrant no matter what because the deputies had probable cause, and the deputies then would have done exactly what they did here, and the result would have been exactly the same. Calling the judge would not have changed the outcome, and that's why there's no probable cause. And it's telling that every – Kagan But it might very well change – Proximate cause, sorry. It might very well change the outcome. When somebody shows up with a warrant, they show the warrant, they have legal authority. People act very differently than when somebody shows up with no warrant and says, I don't have authority, I'm coming in anyway. That's a very different set of circumstances that a homeowner has to respond to. And what is – what foreseeably happens where there is a warrant is not the same thing. When somebody – when a police officer has legal authority, tells the homeowner he has legal authority, the set of results that happens is just not the same as when a police officer says, I'm here, I don't have any legal authority, I'm coming in anyway. Rosenkranz Your Honor, every fact that you've recited beyond not having the warrant is a fact that you've inserted into the scenario that is all about giving notice to the – to the suspect. Warrants are not designed to give notice to anyone. You could show up with a telephonic warrant that shows – that shows the homeowner nothing at all. This Court said in Grubbs, it is not the perfect – the purpose of the warrant. Kagan Well, it's possible. I mean, I take the point, Mr. Rosenkranz. It's possible that you have a warrant in your pocket, and you don't say anything about it, although that would seem like very silly, stupid police work. But the prototypical case, when somebody has a warrant, is that they tell a homeowner they have a warrant and that they have a right to be on the premises. That's what usually happens. And similarly, what often happens is that when somebody doesn't say that to a homeowner, they are making it far more likely that violence will ensue. And certainly, the kind of violence that could ensue is not the kind of fluky, random stuff that is filtered out by approximate cause inquiry. Rosenkranz Your Honor, I disagree. The reason officers announce themselves before executing a warrant is not the fact that they have a warrant, but because there is a separate constitutional command of knocking and announcing, with or without a warrant. That was a separate mistake that the officers made here that was held to be not a violation of clearly established law, and therefore cannot be the basis of liability. And it is telling that every time plaintiffs refer to what caused this injury, and every time the Ninth Circuit refers to what caused this injury, it is a reference to startling, unannounced, without warning, without notice, all of the things that you've woven into your hypothetical. That is not the violation of clearly established law here. The violation of clearly established law here was the failure to get a search warrant in advance, and search warrants this Court held in Grubbs are not designed to provide a topic of conversation or to provide notice to the suspect. Knock and announce is designed to provide notice, but that can't be a basis of liability here. Breyer Why do you break why is everyone breaking it down in this way? That's what I'm having trouble with. Rosenkranz Why not just say, look, there was a seizure. They killed him or wounded him. It's a seizure. In fact, the question is, was that seizure, i.e., shooting him, was that seizure unreasonable and clearly unreasonable? And the answer to yes is, yeah, look at all the circumstances. There's one, they went into the house without even telling the woman, then they break in, they go into the other house without a warrant, without telling anybody. I'm not saying that those are independently violations of the Constitution, though they might be. If you look at the whole situation and say, you know what this is like? It's like the classic tort case. Somebody pushes somebody else into the street, or he is run down by a negligent driver. Is the individual, there's a supervening cause, negligent driver, of course they're liable, because that's what happens. You expect negligent drivers, and similarly you expect people to defend themselves. That's a why what's wrong with that? Well, Your Honor, what's wrong with that is that this Court's methodology is to, especially in cases involving personal liability to officers, is you start with a violation of clearly established law. You started, Justice Breyer, with the seizure. The seizure was not a violation of clearly established law. Breyer, if you break it down, temporarily, second by second, but if you look at the whole situation. Right. So I see my rebuttal time has started. Let me answer very briefly, though, that what you've done now with the excessive force piece is to focus not on the decision that the officer makes at that moment, which is the critical decision under Graham, but to find that what he did was unreasonable, even though the court of appeals and the district court found it to have been unreasonable at that moment. Thank you, Your Honor. Roberts. Thank you, counsel. Ms. Zaharsky. Mr. Chief Justice, and may it please the Court, we have two questions in this case, and I think I'd like to pick up with where my co-counsel left off, which was with Justice Breyer's question, which I think goes to the first question presented. And I think the question was, why can't we just say that we can consider the facts of causing the situation as part of the reasonableness inquiry? And the answer there is because the question that we're answering under Graham is, was the officer's force, use of force, reasonable in the circumstances that he faced? And those depend really on two sets of facts. One, what was the individual doing? Was the person a threat? Did he have a weapon, a propensity to use it? Was a member of the public at risk? Was he fleeing, committing a crime, et cetera? And two, how did the officer respond to it? What were the officer's options? What did the off the officer's use of force proportional, et cetera? It doesn't ask whether the police officer created the situation. It takes stepping into the shoes, the situation the police officer. Sotomayor, so why is it that every Graham case we look at, all the car chase cases, every single one of them, we, when we're talking about the situation facing the officer, we look at everything the officer and the victim did that led up to the moment of confrontation, because all of the facts that you point to as the police officer's knowledge of the victim are facts that usually are interwined with what led up to the incident. So if you look at a car chase, you're looking at a person who, over an extended period of time, has driven a car crazily, has put other people at risk, has swerved and missed other cars, done a series of things that the officer's aware of, because he participated in the chase. And at the moment that he's looking at what the victim, what the defendant is doing, he's saying, he drove the car and almost hit another car. He's pointing the car at me, he's going to hit me. And but you're looking at both sides of that equation. You're not ratcheting it up on one side. Well, you're right that you're looking at all of the facts and circumstances, but those that bear on whether the use of force is reasonable. And just to give an example, in Plumhoff, which was one of the car chase cases that the Court addressed, the district court in that case said, well, the police officer was chasing him, so the police officer helped create the dangerous situation. And this Court in footnote 3 of its opinion said, no, police, by doing their jobs, don't, aren't responsible for creating the dangerous situation, and don't forfeit the ability to defend themselves in the public. Sotomayor, but why is it how they do their job? Because they have to know, they have to know what reasonable people will do. I mean, if a 1983 claim is a tort claim, and if they jump in front of a car, of a total stranger, on the street, and the person is coming at them, should that person behind the wheel bear the brunt of an injury? Because the police officer says, the car was coming towards me, so to save myself, I pulled a gun and shot them. Even though this is Joe Blow, who has never been arrested, doesn't own a gun, never knew the officer had jumped into the street. If a normal person did that, they'd pay for that victim's injury. Why does a police officer get a pass on that? Saharsky, it's not a question of asking whether the police just behaved reasonably in the abstract, but in terms of each thing that the police officer did and whether it followed the established rules, the established rules for a police officer to pull a gun and shoot a driver that has no guilt associated with him or her. Not an armed felon, just a normal person to stumble into the street and say, I'm a police officer, I'm going to seize that person and stop myself from being injured by shooting that person. Well, I think you would ask in that question whether there really was a threat that the officer was responding to. And I think you're positing a situation in which there really wasn't a threat there. But I think in this circumstance, everyone recognized that there was a threat facing these officers who are going about doing their police business in good faith and they see a person pointing what appeared to be a gun at them. And what the Ninth Circuit said is, we're going to second-guess everything else that you did that day. And even though this use of force was reasonable under Graham, we're going to hold you liable for it. Roberts, I just want to put the discussion so far this morning in the right framework. We're talking about the second question presented, right? None of this seems to me to be involved, the provocation rule in the Ninth Circuit. At least the question about did they get a warrant, did they not get a warrant. How do you understand the Ninth Circuit's provocation rule in distinction to what we've been talking about in terms of proximate cause and things like that? Sure. The provocation rule takes under the Ninth Circuit's precedence a reasonable use of force and deems it unreasonable because the police made an earlier constitutional mistake. And we think that that is just flatly wrong. You should be able to do that. Roberts, so is that's the label what's wrong? I would think of provocation as something fairly immediate, something that causes the pulling of the gun by the victim or something like that. I don't think of it as provocation that you should have gotten a search warrant earlier in the day, but you didn't, and that led to this. I mean, the thing that's wrong is what the Ninth Circuit is doing, which is saying the police created the situation by doing things that are not constitutional violations, but that the Ninth Circuit later finds with the benefit of 20-20 hindsight to be reasonable, unreasonable. And that's actually what we've seen. We've had this doctrine in the Ninth Circuit for 20 years now. It's incredibly ill-defined, does not put in place clear rules for the police. And the kinds of things that the Ninth Circuit is second-guessing is maybe the police should have used a hostage negotiator for longer before going into the house in Alexander. That's the one with the sewage seeping outside of the house. They tried to spend a month trying to talk to that guy. They went to his house, used a hostage negotiator. Or the situation in Sheehan, where there was a very difficult situation with a mentally ill woman who was threatening the police, and the Ninth Circuit said the police should have tried to calm down the situation for longer. I mean, these are incredibly difficult determinations that are being made, and under the Ninth Circuit's rule, the Ninth Circuit's just second-guessing, doing exactly what this Court has said shouldn't be done. Kennedy, and so that's why I'm saying that. Kennedy, but isn't that a little bit different than the provocation rule at 25a, where they say there was no warrant and, therefore, there's saliva? Those are two different things, correct? Right. We understand those to be the two alternative holdings from the first question presented and the second question presented. So the second question presented isn't talking about whether the use of force is constitutionally excessive, clearly established violation. It's talking about was there a violation with the entry, and did that proximately cause the damages at issue. And if I can address that question, we just think there's a fundamental problem with the Ninth Circuit. Kagan, can I just ask, do you agree in general, before you address the question in particular, do you agree in general with that framing, that if there is an independent constitutional violation, and if it does proximately cause the injury, then there's a 1983 action? In general, yes. I mean, 1983 imposes liability and damages for clearly established constitutional violations, and although this Court has had very few opportunities to address causation in the section 1983 context, it has said that as a general matter, it would start with total law principles, and I think that those would include proximate causation and superseding cause principles. But we have a problem in this case in what the Ninth Circuit found was the proximate cause of the injuries in this case was the failure to knock an ounce. But the failure to knock an ounce was not a violation of clearly established law. The officers have qualified immunity for that. So that seems fair enough, but then the question might become, whether here or on remand, whether an unauthorized entry where there was a clearly established violation, whether one could say that that was the proximate cause of the shooting. Yes. And I think there's two answers to that question, one about this case, and second more generally. About this case, the analysis by the Ninth Circuit was that it was the knock-an-ounce and not the warrant. And if I could just illustrate this, in this case you had officers that did not have a warrant and did not knock an ounce, but imagine that they did have a warrant and still didn't knock an ounce. What the Ninth Circuit said was the problem was the startling entry. So with or without the warrant, you would have had this problem from the knock-an-ounce, but as we discussed, the knock-an-ounce is immunized. As a general matter, I think the point that Petitioners were making in argument and in the brief is well taken, that the scope of the risks for a warrant violation as opposed to the scope of the risks for a knock-an-ounce violation are very different. Kagan. Kagan. Kagan. But one of the warrant violations, it's just saying unauthorized entry, and the question is whether it's within the normal scope of the risk that an unauthorized entry produces violence, not that it always or probably produces violence, but that it might produce violence in the way we kind of ask when we do proximate cause analysis. Right. And I don't think that we would say that an unauthorized entry itself normally produces violence when you're talking about proximate cause. It doesn't have to normally. It doesn't have to more ordinary. You know, proximate cause is just we filter out the really fluky stuff. Well, I think we understand proximate cause and the scope of the risks. I mean, what are the natural and probable consequences of your actions? What are the risks that make the conduct tortuous? What bad things do you think are going to occur if you do this? And in the warrant context, we're talking about police showing up at the door. And no, we don't think that it is generally a reasonable reaction when police show up at the door with or without a warrant that you'd react violently. And that's what Grubb said, is that when the police come to your door, you submit at that time and that you can challenge the warrant in court later. Could I have one more sentence? Well, and also if you could get to Justice Kennedy's hypothetical. Okay. Just to finish this, but the Court has recognized that you have a problem in the knock-and-announce context that you don't know that they're the police. And so in that context, there really is a potential risk of violence. Once you know that they're the police, your citizen is expected to stand down. Justice Kennedy's hypothetical, if I remember it, I think is an arrest without probable cause and the damages that would follow. No, no. There is probable cause. Oh, I'm sorry. But there was a failure to get a warrant. Yes. And there should have been a warrant. Right. I think the question you would ask in that case is the normal proximate cause question about what kind of damages, you know, would there be from a failure to get a warrant in those circumstances, what's natural and foreseeable. So I'm not going to say that. And if the humiliation is the same either way, no damage? I'm not saying that it depends on whether proximate cause and you could have gotten a warrant. I'm just saying that you look at what actually happened and determine the natural and probable consequences from that. I mean, the Court, just maybe one more sentence, the Court has not had a lot of opportunities in the 1983 context to work out these probable cause cases. I think in some of the Court's other opinions, you've said probable cause is a very flexible concept. Courts of appeals have a lot of experience doing it. This Court less. And that's why we would say to decide the second question presented very narrowly and knock it into all of these questions. Thank you. Alito, could I ask a follow-up question on that? If in Justice Kennedy's hypothetical, there had been an application for a warrant, isn't it entirely possible, particularly under the facts that he hypothesized, that the judge would say you don't need an arrest warrant in this situation? You can ask the defendant's attorney to bring the defendant in and surrender. I know that that's happened quite a few times. Sure. That's something that could happen. Thank you. Thank you, counsel. Mr. Feldman. Thank you, Mr. Chief Justice, and may it please the Court. If the Court reaches the constitutional issue in the case, we believe that the Court should adopt the following standard. Where a government official takes action that foreseeably creates a need for the use of force and results in that use of force, Graham-Scott balancing should be applied to determine whether that action is objectively unreasonable. And we are not, as Petitioner's counsel suggested, suggesting to this Court that it adopt a new breed of a constitutional tort. This Court has always focused on the totality of the circumstances, and there is a long line of cases culminating in Kentucky v. King that recognizes the constitutional significance of predicate acts. And that standard? The standard that we suggest that this Court adopt is that where a government official takes action that foreseeably creates a need for the use of force and results in that use of force, Graham-Scott balancing should be applied to determine whether that action is objectively unreasonable. Under Graham and Scott, courts would, of course, consider the governmental interest at stake, the nature and quality of the intrusion on the individual's Fourth Amendment interests, and the relative probability of those affected by the decision. Kennedy, are you defending the Ninth Circuit's statement at page 22a of the Petition Appendix? Here the district court held that because the officers violated the Fourth Amendment by searching the shack without a warrant, which proximately caused the plaintiff's injuries, liability was proper. That is an appropriate way to find liability in this case. I just don't see the proximate cause between failure to get the warrant and what happened here. Well, there were two proximate causes here. One proximate cause was the unlawful entry. The entry was unlawful because there was no warrant. The second proximate cause, as the lower courts recognized, was the failure to announce. And it was those circumstances that are the objectively unreasonable behavior of the officer. Roberts, Well, not the second one. I thought the failure to announce, they determined, and I understand you do accept it, that that was not a violation of clearly established law. That's right. And so what that means is that the cause of action cannot be brought, but the conduct doesn't disappear. And proximate cause principles are not based on whether a legal violation proximately caused harm, but whether the conduct caused harm. And the conduct that caused harm in this case was the entry without giving notice. If you take either one of those away, then, of course, the harm doesn't occur. That's another way of saying they are both necessary proximate causes as well as but-for causes. And when we look at the Kentucky v. King line of cases, what we see is that this Court has recognized that there are circumstances in which events allow police officers to take certain actions, plain view. Alito, that was a different context. It had to do with an exception to the warrant requirement. But the problem with your test, as you articulated and as I understand it, is that you start out with something that is said to be unreasonable, but it is not a violation of the Fourth Amendment. And you impose liability for that decision, not for the ultimate decision to use deadly force. And this has come up in the situation like Sheehan, where there's a dispute about whether it's reasonable for you have a mentally disturbed person, and let's say the person has a hostage in a house, or there's an innocent person there and the mentally disturbed person is acting in a way that seems to present a serious threat to the innocent person in the house. And there's a dispute about whether it's reasonable for the police to enter, as opposed to waiting for a psychological expert, or they only have negotiations for a short period of time before they enter, and it's argued that wasn't reasonable, that's not good police practice, they should have waited a longer period of time. And you end up imposing liability, and then once they go in, then they're in a life-threatening situation and they use force. You end up imposing liability for what is arguably a violation of best police practices or something that is recommended by experts in this situation. That's what's anomalous about the rule that you've suggested. I wouldn't agree that it's anomalous, but I also think that at least in this case, unlike in Sheehan, the Court doesn't have to decide whether objectively unreasonable behavior alone is enough, because we also happen to have an unlawful entry which wasn't present in the Sheehan case. When the officers entered, they were no different than trespassers. And so that's a different way of looking at the situation, and I agree that that's a, you know, that's the question that you would think you would address under the Fourth Amendment. You start out with the Fourth Amendment violation, and then you say, did it proximately cause the use of deadly force? But not the rule that you suggested, where you start out with something that isn't a violation of the Fourth Amendment, whether or not it represents the best police practices or not. Let me give you a few examples, Justice Alito, of why it's important to focus on the predicate conduct. These are real-world examples in decisions that have been, and circumstances that have been addressed by the Department of Justice and this Court. In Chicago, there's a problem with officers who jump out of unmarked cars wearing plainclothes brandishing guns. It's not a constitutional violation. There's no seizure, but it's clearly unreasonable and it leads to the use, unnecessary use of force. Alito, it may very well be a seizure. If they interfere with the liberty of the person who they approach, then it's a seizure. It's a stop. And that would be the situation in the hypothetical that Justice Sotomayor mentioned, which was presented in your brief, where the police officer jumps in front of a car and doesn't allow the driver enough time to stop. And then as the driver is approaching the police officer, the police officer shoots. That's a seizure. And so you look at the entire seizure, the jumping in front of the car, plus the ultimate shooting, to determine whether it's reasonable. And there's nothing wrong with that approach either in the Kentucky v. King argument. I think Justice Kagan referred to that as the holistic unreasonableness approach. If you look at the from the moment of time that the officers interact with somebody to the moment that there is a seizure, here, that's the moment that the officers arrived at the Mendez's home until the moment that the officers fired their weapons into the Mendez's home and injured them, which effectuated the seizure. Alito, but the Fourth Amendment doesn't prohibit unreasonable interactions. What it prohibits is unreasonable searches and seizures. So it's entirely appropriate to look at the whole seizure, but not this chain of interactions that includes a lot of things that happened before there ever is conduct that implicates the Fourth Amendment. Well, in the examples that we've given where the police officer goes into someone's home in the middle of the night or stands outside someone's home brandishing weapons or jumps out of a car brandishing weapons, that's the beginning of the interaction. And if we look at the totality of the circumstances, as this Court has repeatedly mandated, among those circumstances is the objectively unreasonable behavior of the officers that foreseeably and directly leads to the use of force. So whether we look at it through the Kentucky v. King framework, which is really where unreasonable or unconstitutional conduct prevents an officer from relying on certain circumstances to avoid liability, where we look at it holistically, there is an enormous amount of evidence in this record what these officers did was unreasonable. Breyer, so how is that? That is, what I think the argument on the other side is in response. I was looking, saying, look holistically. The seizure is the shooting and his injury. Okay? Right. The question is, would any reasonable person think that that was unreasonable? Now, we break it down. Not unreasonable to the shoot in the situation. That wasn't unreasonable. Sues too. He says, they say, not unconstitutional or unreasonably wrong, not to knock an ounce, because that's what the Ninth Circuit found. And the part that was wrong, not getting a warrant, made no difference. So they're saying zero plus zero plus zero, it must equal zero. Okay? That, I think, is the argument I'm trying to put that I want to hear the answer to. Right. And I think the flaw in the reasoning is that what we have here are two necessary proximate causes. So what that means is if you take one away, the harm doesn't occur. If you take the other away, the harm doesn't occur. So it really isn't zero plus zero plus zero equals zero. Now, each of these actions, the entry and the entry without notice, were necessary for the harm to occur. I don't see you say if you take away one that the – if you take away the failure to get the search warrant, the harm still occurs. Right. Because what they're doing Mr. Chief Justice is they are changing the legality of the conduct, but they are not changing the conduct. When you change the legality of the conduct, but you don't change the conduct, of course the same results occur. Well, then it's not – it's – and this, I think, is the argument on the other side, then it's irrelevant. In other words, the search warrant is not going to change the conduct. But the failure to get the search warrant is the only thing that violated the standards under 1983. So it's not a proximate cause at all of the conduct, because as you just said, it wouldn't have changed it in any way. The conduct is what we use to define proximate cause. Okay. The entry, or the entry without notice. Right. That either did or did not proximately cause the harm. Right. It has to be illegal. But then why are we talking about the failure to get a search warrant? Why did that make a difference? It made a difference in this case because it is what makes the conduct of the police officers unconstitutional. That does not proximately cause. Well, the conduct of the officers proximately caused the injury. I guess I'm not understanding, Mr. Feldman, why you're quite making this distinction. I mean, it – why isn't it just, look, the entry without authority, the entry without a warrant, that's a clear but-for cause of the shooting. The shooting wouldn't have happened if there hadn't been the entry, right? Right. Now, the question is, is it a proximate cause of the inquiry? And it seems to me you have to make a case and tell me if you agree or don't agree, you have to make a case that unauthorized entry, that one of the things that foreseeably can happen with an unauthorized entry is that the person whose home it is will react with violence. I agree with you completely. And, of course, the foreseeability issue was the issue that was extensively litigated in the trial courts. Well, but I don't see how you can agree. I don't think it addresses at least my concern, which why and in what way did the failure to get a warrant cause everything that followed? It was the entry that caused the entry. I'm with you there. I understand that. But the failure to get a warrant did not cause the entry. As I understand courts applying proximate cause analysis, we begin with the conduct and we ask ourselves did that conduct directly, that's the proximate cause issue, did that conduct directly lead to the harm? Right. If we answer that question yes, we then look at whether that conduct was illegal. Okay. Now, there maybe I'm just asking the same thing over and over again, and if so, I apologize. But how did the conduct, the failure to get the warrant, lead to the entry in this case? The entry, I apologize. I'm saying the same thing over and over again. I think you're asking the same question. But I guess maybe I just, you, as I understand your theory, the failure to get a warrant caused, that's why we call it a provocation, I guess, caused the entry which caused the confrontation. Is that right? I wouldn't say that the failure to get a warrant caused the entry. The officer's decision to enter is what caused the entry. Exactly. So I don't know why the failure to get a warrant matters. Well, can I suggest why it might matter? I mean, there are two kinds of entry. One is, let's, for these purposes, one is an authorized entry and one is an unauthorized entry. Now, the question is, what kind of conduct does each of those kinds of entries provoke? If you're an authorized entry, you don't really think that it's going to provoke violence. But if you're an unauthorized entry, you do think it's going to provoke violence. So the approximate cause, the approximate results of each of those two different kinds of entry are very different. Counsel, if I could interrupt you to ask a question. Why is it that whether it's authorized or not, you don't think it's going to prompt violence? The fact that you have a search warrant, you may have a search warrant and say, I've got to execute a search warrant to pick up this armed and dangerous felon. You may still think that's going to prompt violence. That doesn't have anything to do with the nature of the entry you're going to have to make later on. Knock and announce does, because if you just burst in, the person may reasonably think this is a burglar. But if you knock and announce, it doesn't. That does affect the nature of the conduct. But having a warrant, whether it's authorized or not, doesn't. If the officers don't have a warrant and they enter, they are trespassers. The purpose of the Fourth Amendment is to treat them as trespassers. Let me give you two situations. Situation A, the officers get a warrant. They go to the residence. They knock on the door. The resident opens the door. They say, we have a search warrant. We're going to search your house. All right? Situation B, they don't get a search warrant. They think they have exigent circumstances. They knock on the door. And they, in both cases, they're uniformed police officers. They say, we're police officers, we're here, we're going to search your house. We don't have a warrant. We think we have a we can search your house without a warrant because we have an exception to the warrant requirement. Now, is there more, is it more likely that there's going to be violence in the second situation than in the first situation? I don't see why there is. I would agree, Your Honor, that in those circumstances, it would not be more likely that there would be violence in one situation or the other. Well, then I don't see where there's proximate cause. Well, the proximate cause comes from the two things that the officers did that led directly and foreseeably to the confrontation and the violent confrontation with the homeowners. One is that they decided to enter, and that was unconstitutional. And the other is that they went in without giving any notice. And if you look at that through the case, I don't see where there's proximate  Sotomayor, making a presumption there that I think you have to address, which is, yes, they entered without a warrant, you're assuming it's unconstitutional. No one's addressed, and I don't think the Court did below, whether that entry had an exception for unconstitutionality. Was it an exigent circumstance or not? You're assuming that they didn't have a legal motive for entry. I'm willing to start with that assumption, but let's assume that a court below could say that the entry was lawful because it was pursuant to exigent circumstances. What would happen to your argument then? Well, let me start by clarifying that the courts below did, in fact, address the full panoply of exceptions to the Warrant Clause. So we're assuming that the entry was unlawful, there were no exceptions to it in this case? Correct. Yes. And in my hypothetical, what I neglected to say but should have said was that there weren't exigent circumstances. So the entry was unlawful, but they had a warrant, but you still have those two situations. In one case they have a warrant, in the other case they say, we think, and they turn out to be wrong, that we don't need a warrant. But I don't – I asked you whether there's a greater risk of violence in one than the other, and I'd like to hear your answer. Why would there be a greater risk of violence in the situation where the resident knows that it's – that they are police officers and they're going to conduct a search, as opposed to the situation where there's a warrant? Any violence that the resident directs at the police officer is illegal in both situations. Right? Right. It's not justified for them to attack the police. They – well, I don't know if they're police officers. No, I don't – I know you're a police officer, but I don't think you really have an exception to the warrant requirement, so I'm going to shoot you. They can't do that, can they?  So they're not going to do that. Mr. Feldman, you said there are two kinds of entrants, right? One is a trespasser entrant and one is a non-trespasser entrant, a guest entrant, let's call it a person, right? Right. And when a trespasser enters your home, different sets of things foreseeably happen. Correct. Than when a guest enters your home. Correct. So it's not just an entry. The question is who's entering, a trespasser or a guest? Correct. And that is the problem with this case, is that when the officers pulled back the blanket, there was no indication and no reason for them to know that the Mendezes knew that they were police officers. So in the trespasser example, if the homeowner has a Second Amendment right, obviously she does, to point that weapon at the trespasser, and the trespasser then shoots the homeowner, that's murder. But here, ordinary tort law, just pick up on this for a second, and don't answer it if it's a red herring. But, look, everybody's talking about causation. Maybe this isn't about causation. Perhaps it's about whether a reasonable person, namely a reasonable policeman, namely any reasonable policeman, would know in the circumstances that what he was doing was unconstitutional. What was he doing? Shooting someone. Why would he know it was unconstitutional? Well, here in ordinary tort law, case 1, the trespasser reasonably believes, but wrongly believes, that he's an invited guest. Case 2, he knows he's a trespasser. Okay? Does that make a difference to the result? It absolutely does make a difference to the result. Because? Because the legal principles that apply in those circumstances are different. The homeowner has a right to use force against an unlawful entrant. If the entrant is known to be a police officer, not because of the knock-and-announce rule, but because he sees the uniform, then the rules change. If the trespasser comes in and says, wait a second, I'm just your neighbor and I'm looking for some, you know, to use your telephone, the rules would change. Breyer's just thinking, you know, we want policemen to protect themselves. They have to. Of course they do. But there can be circumstances where, of course, that's true that they have a right to protect themselves, but the background circumstances are such that there is no justification for the whole ball of wax. Correct. And that's, I think, what your argument is in respect to the warrant, if not the knock-and-announce, you can't deal with that anymore. So it's the whole ball of wax which has less justification, and it is clear that the action from A to Z is what caused the death. Now, you haven't really strongly argued that, so I'm a little hesitant to bring it up. Well, in a sense, that's the Petitioner's test, but not quite. I mean, what the Petitioner's would tell you is that you can at least give these officers knowledge of what has happened beforehand. And here's the four things those officers knew, which I think goes to the holistic reasonableness. First, they knew they were entering someone's house, not subjectively, but objective. The reasonable officer on the scene knew that they were going into someone's house. The objectively reasonable officer on the scene knew it was an unlawful entry. The objectively reasonable officer on the scene knew that this was the Mendez's house. And the objectively reasonable officer on the scene knew that the Mendez had no way of knowing that the officer was a police officer. So in that circumstance, it is objectively unreasonable and it is a Fourth Amendment violation to use force. If we look at it holistically, if we look at it through sort of the segmented approach of Kentucky v. King, then it's the unreasonable actions that got the police officer into that situation that preclude him from avoiding liability based on the fact that Mr. Mendez moved a gun. And I would agree with the comments that were made earlier that this isn't about telling police officers they can't take actions to protect themselves. We know that they will. The question in the end is who bears the brunt of the officer's unreasonable conduct, because there's no allegation here that the Mendez's did anything wrong. If somebody comes into your house and you move a gun, you have a Second Amendment right to do that. If you're in the privacy of your own home, the Fourth Amendment tells you that you can do anything you want as long as it's not illegal, and moving a gun certainly isn't illegal. So in the end, what happened here was prompted by the officers, not by the Mendez's. The only exception to that, of course, is the superseding cause doctrine, and we believe that this Court can resolve this entire case based on the superseding cause doctrine and the fact that the proximate cause doctrine we submit was not properly stated. Sotomayor, let's go to that superseding cause doctrine. Earlier you said to Justice Alito that if a police officer unlawfully enters your home, announces him or herself, shows you a badge, and you pull out a gun and point it at him or her, that that officer would not be liable for shooting you, because presumably that person, knowing that you're a police officer, if they pull a gun on you, they're responsible for the consequences, correct? Correct. All right. So what's the difference between that scenario and this one? Why aren't the men Mr. Mendez's – I don't think there's a dispute that he was moving the gun not because he heard the police officers, but he just wanted to get it out of the way. That there was no intent on his part. But why isn't it just like the other person who points the gun at someone? The difference is culpability. The test that we have proposed for superseding cause allows police officers to avoid liability if they can show either that the intervening act was unforeseeable or culpable. If somebody was to do that, it would be unforeseeable, correct? This is standard tort law. Yes, it is. It flows directly from the restatement, and this Court has addressed these issues in the Exxon case, in the Staub case. And culpability is significant. And so if an officer enters someone's house, whether it's illegal or not, and the occupants know that the police officer is a police officer, and yet they point a weapon at the police officer, our concession, if you can call it that, would be that that was a superseding cause. And when you look at the case law, all of the cases, I think, address the issue the same way, including, of course, the Bodine decision. Kennedy, why wasn't there a superseding cause here after the failure to get the warrant? There was no superseding cause here. My understanding of your argument is you have not, that you are defending the Ninth Amendment because the officers violated the Fourth Amendment by searching the house without a warrant, that was the proximate cause. You're defending that. I believe that is a correct holding. I think that's a difficult position to defend. Well, had it not been for the entry, there would not have been any shooting. And I recognize that's but-for causation, and I don't mean to rely on but-for causation, because then we have to go to the next step, which is proximate cause. And that's a question of directness on the one hand versus remoteness on the other. The unlawful entry, the entry, that's the action, the entry led directly to this shooting. And so the proximate cause chain is not attenuated. It is extremely direct. I think that's the correct way to argue the case, and based on that, then we can have a very broad discussion as to whether or not it was indeed proximate. Thank you. If the Court doesn't have any questions, I will conclude simply by saying that this is a case, quite specifically, about how citizens ought to act when they are dealing with known law enforcement officers. When people know that they are dealing with known law enforcement officers, nobody goes anywhere near a gun for fear of being shot. But Mr. and Mrs. Mendez never had that opportunity because the Petitioners here decided to enter their home without warning, without a warrant or consent, and in violation of clearly established Fourth Amendment law. We ask that the damages award be upheld. Thank you. Roberts. Roberts. Thank you, Mr. Chief Justice. Let me start with Justice Kagan's question, does a warrantless opening of a door create a different risk from a opening of a door having called a judge and received approval in advance? The answer is no, and it goes directly to one of the last things Mr. Feldman was saying. An officer in broad daylight, in full uniform, when he simply opens a door, is not expecting to be faced with a gun a foot away from him. Wait a minute. This wasn't in the middle of the day. Yes, it was, Your Honor. It was 1 p.m. 1 p.m. in the afternoon. Yes, Your Honor. Middle of the day. He's drenched in sunlight. Now, he does not know that Mr. Mendez will not recognize him as a police officer. That goes to Mr. Feldman's point about culpability. Culpability has to be viewed from the perspective of the officer. That is what we are doing in 1983 cases, and that's what Graham says you have to do. From his perspective he didn't have the technicality about the knock and announce. Ginsburg. Let's assume that this was a separate house, so it required a knock and announce. There's nothing about the closure or anything. Then, would you recognize that they had a good 1983 case? They would have a much better 1983 case, Your Honor. This much better, or would they have? There would still be a discussion to be had about whether when an officer shows up in full uniform, someone should expect to understand that he is an officer. But let's just go broaden that to Justice Breyer's question about looking at all of this holistically. First, this Court has said you don't look at it holistically. Hudson says you break up the warrant requirement from the knock and announce requirement. That is what this Court did. And that's what this Court should certainly do in a liability case, but let's go holistically. Put yourselves in the shoes of these deputies, which is what 1983 says and this – and Graham says we're supposed to do. You are not looking to hurt anyone. You're doing your job, which is to apprehend someone you believe to be armed and dangerous. You look at a shack. You believe there's no way on God's earth that anyone would live in that shack, a conclusion that a judge later concludes was unreasonable, but credits that that was a firmly held belief by these deputies. You move a curtain back in broad daylight, but in the darkness you see the silhouette of a gun pointed at you, and it's only a foot away from your face. You think it's O'Dell, the armed and dangerous person who you think – who you think is hiding in this shack. You reasonably think this is where I'm going to die, and you have only a second to decide what to do. Any rule that says that you can't fire in that circumstance is an untenable rule, whether you look at it from the perspective of proximate cause going forward or you look at it from the perspective of the provocation doctrine moving backwards. When this Court talks about the totality of the circumstances, yes, an officer should be absorbing the totality of the circumstances, but only with a view – when you're talking about the seizure – only with a view toward understanding what is the risk I'm facing here and now. That's the question he has to answer in that split second. And the risk that he is facing here and now has nothing to do with whether he committed a mistake earlier on. His life and the lives of the people he's protecting do not matter any less just because there was a mistake en route to the confrontation. If there are no further questions, we respectfully request that the Court reverse the Ninth Circuit's judgment. Thank you, counsel. Roberts. Thank you, counsel. The case is submitted.